50 CCPA

**Application of John PAVLECKA.**

**Patent Appeal No. 6966.**

United States Court of Customs and Patent Appeals.

June 6, 1963.

John Pavlecka, pro se.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This is an appeal from that part of the decision of the Board of Appeals which affirmed the examiner's rejection of claim 59 of appellant's application[1] for "Interlocked Panel Structure." Thirty-two claims were allowed.

The appealed claim reads:

"59. In a structure, two panel units spaced apart from each other, stringers extending on said panel units at equal and parallel intervals, said stringers bearing reentrant mortise and tenon formations frontally thereon, said formations being asymmetrical about a central plane and being identical and congruent in opposition with each other, said stringers on said panel units falling into opposition with each other in partly overlapping to full facing relationships of said panel units, and each two of said stringers in opposition being in a slidable engagement of said formations thereof with each other in any of said relationships of said panel units whereby said panel units may be identical with each other."

The references relied on are:

London 2,164,138 June 27, 1939.
Katz 1,945,859 February 6, 1934.

Appellant's application relates to a construction made up of thin panels which may be assembled in edge-to-edge relationship to form faces of a wall with the panels in the two faces connected in spaced relationship to provide a hollow construction. Members designated "stringers" project inwardly from the sides of the panels and each stringer bears a mortise-and-tenon formation adapted to engage the mating portion of such formation borne by another stringer. Where the stringer is provided intermediate the ends of a panel, it presents what might be termed a full mortise-and-tenon formation or element. Stringers at the end of a panel, however, are modified to form only half of such full mortise-and-tenon formations and may be termed "half" stringers. When two panels bearing the latter formations are placed in edge-to-edge relationship, the half stringer on one panel complements that on the other to form, in effect, a full stringer. A unitary full stringer at an intermediate location on one panel can thus be engaged with two half stringers on two abutting panels spaced therefrom to secure the three panels together with the first panel forming part of one face of the wall and the other two panels being spaced therefrom to form part of the opposite face of the wall.

In certain forms of the structure, the full stringers secured at intermediate points on a panel include both a mortise formation and a tenon formation, said formations being disposed on opposite sides of a center plane of the stringer perpendicular to the panel. With such construction, designated by appellant as asymmetrical, the end stringer elements or half stringers, include only a mortise formation or a tenon formation.

The appealed claim relates to two spaced-apart panel units bearing stringers on confronting faces thereof. The stringers have reentrant mortise-and-tenon formations frontally thereon, which formations are defined as asymmetrical about a central plane and "identical and congruent in opposition with each other." In a request for recon-

---

[1]. Serial No. 324,903, filed December 9, 1952.

sideration by the board, appellant submitted the sketches reproduced below as illustrative of two of the available relationships with his construction.

A. IDENTICAL PANEL UNITS 1 and 1′ IN AN OVERLAPPING RELATIONSHIP USEFUL AS A SUBCOMBINATION IN A HOLLOW WALL.

B. THE SAME PANEL UNITS IN A FULL FACING RELATIONSHIP AS EITHER A SUBCOMBINATION IN A HOLLOW WALL OR A COMPLETE COMBINATION USEFUL AS A DECK, BILLBOARD, DOOR, TABLE TOP, ETC.

The London patent relates to wall panel constructions, its most pertinent form being that shown in horizontal section in Fig. 4, reproduced below.

In the illustrated form, opposed panels bear interlocked vertical stringers of three different forms designated as E, F, and G. Confronting mortise and tenon formations on the stringers are symmetrical about vertical planes passing centrally through the respective stringers perpendicularly to the panels. The portions of the stringers defining the mortise-and-tenon formations are of flexible material so that the mating elements of the formation can be snapped into engagement.

Katz discloses single dove-tail mortise-and-tenon connections for segments of a metal door saddle or threshold. As contrasted with the sinuous mortise-and-tenon connections of London, the Katz connections are made up of flat surfaces meeting at sharp edges and are assembled by sliding the cooperating members longitudinally to final position.

In the final rejection, the examiner stated:

"Claims 55 and 58–60 are rejected as unpatentable over London in view

of Katz. No invention would be involved in forming the interlocking means connecting the stringers E' and F as mortise and tenon means as taught by Katz. Whether or not said mortise and tenon structure is asymmetrical about a central plane through the stringers or whether the stringers are identical is a matter of choice and lacking in any invention."

He further stated in his Answer:

"Claim 55, * * * is rejected as unpatentable over London in view of Katz. The use of joints of complementary shaped sections with sharp edges and flat surfaces such as those exemplified by Katz is regarded as clearly a matter of a mechanic's skill or choice. Specifically to substitute mortise-and-tenon joints such as those of Katz for the rounded type mortise-and-tenon joints of London would lack invention, i. e. the substitution for stringers E' of London of extruded, machined or cast sections would lack patentable merit.

"London shows panels 17, 18 facing each other and stringers F-, E', F and G in opposition with each other, said stringers bearing lengthwise mortise and tenon formations 54a, 54b, 54c[,] 58 or 54, 55, 58, 58a. As above noted the use of such members with distinct corners would lack patentable merit. * * *

"Claims 58–60 * * * are rejected as unpatentable over London in view of Katz. This ground of rejection has been discussed above in regard to claim 55. The placing of the formations so that they are asymmetrical rather than symmetrical is a matter of choice, i. e. no new result other than a change of shape would be attained by merely, for example, making formations 54a differ in size from formation 54c or making left panel stringer E' wider than right stringer E'. Also note that in, for instance, Figure 2 of Field [London] formations 33, 35 and 34, 36 are mostly to the right of the parting line. Applicant is apparently using the term 'congruent' in the sense of complementary although its geometric meaning is identical in shape. Using what is apparently applicant's meaning formations such as 54a, 54b, 54c and 58 of Field [London] can be described as identical (in shape) and congruent, i. e. matching or complementary."

In affirming, the board stated:

" * * *, we find the Examiner's position, in rejecting claim 59, to be sound for the reason that the London patent, alone, meets the structural essence of this claim."

In the brief for the Commissioner of Patents, the solicitor states that appellant's sketch, reproduced hereinabove, "is a fair cross-sectional representation of the claimed subject matter, provided the edge stringers having symmetrical frontal formations (respective halves of an intermediate "asymmetrical" formation) are disregarded." He further states that "When only two panels appear in the final product in full facing relationship, the edge stringers may have formations identical to those of the intermediate formations."

Concerning the London patent, the solicitor states:

" * * * Application of a ruler to the centers of the intermediate stringers E and F [2] on panel 17 and stringers G and F on panel 18 discloses equal spacing therefor. * *

* * * * * *

" * * * the panels 17 and 18 of London can only be horizontally lapped in the one relationship shown in Figure 4. However, one should recall that the claim cannot include

---

2. Referring to the part of London's Fig. 4 reproduced hereinabove, the stringer F on panel 17 is the stringer at the left end of the figure which includes parts 54a and 54b.

edge stringers for lapped panel wall construction, such edge stringers being mutually different as well as different from the intermediate stringers while the claim requires that all the stringer formations be 'identical.' Hence it is only fair to disregard the edge stringers E′ of London in comparing his Figure 4 construction with the claimed subcombination. Considering only one pair of London's panels 17 and 18 without edge stringers E′, one appreciates the possibility of one stringer displacement to the right for panel 18 as seen in Figure 4.  *  *  *  "

The solicitor's analysis of the breadth of the claim appears to be correct. Referring to appellant's sketch, and particularly to part B thereof, the half-stringers at the ends of the panels are not asymmetrical about a central plane or "identical" with the other stringers as required by the claim and they must, therefore, be disregarded. The claim thus appears to find response in the central position of the structure of sketch B, including the three full size stringers and such portions only of the panels as extend between the outer ends of the outer two of those stringers.

Despite the broad aspect of the claim discussed above, we think it fairly distinguishes over London in the recitations that the mortise-and-tenon formations on the stringers are "asymmetrical about a central plane" and "identical and congruent in opposition to each other." The examiner's position that those features are matters of choice and lacking in invention, and the conclusion of the board that London "meets the structural essence" of the claim, are not convincing for at least two reasons. In the first place, the Patent Office tribunals do not point out, and we are unable to find, any disclosure in the record of asymmetrical formations "identical and congruent in opposition to each other" which a person skilled in the art might choose in place of London's symmetrical formations. Moreover, the requirement in the claim that the mortise-and-tenon

formations be both asymmetrical and identical provides the advantage that the two recited panel units are also identical, as specified in the claim. That is a characteristic not embodied in London where some stringers on one panel have male formations, with stringers at corresponding locations on the opposing panel being female formations.

Since the Katz patent was not relied on to overcome the deficiencies we find in London, it requires no further discussion.

Based on the references and record before us, it is our opinion that the appealed claim has been shown to be patentable over the prior art. At least, we are disposed to resolve doubt on that score in favor of appellant. Under such circumstances, we are obliged to reverse the decision of the board.

Reversed.